Filed 2/15/22  P. v. McDaniels CA2/1
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMARR MARQUIS MCDANIELS,<br><br>    Defendant and Appellant. | B305372<br><br>(Los Angeles County<br>Super. Ct. No. GA076378) |

APPEAL from an order of the Superior Court of Los Angeles County, Jared D. Moses, Judge.  Reversed.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Thomas C. Hsieh and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Petitioner Lamarr Marquis McDaniels appeals from the summary denial of his petition seeking resentencing under Penal Code[1] section 1170.95.  The Supreme Court vacated our prior opinion, in which we reversed the trial court's order regarding McDaniels' murder conviction and affirmed the order regarding his attempted murder conviction.  The high court also transferred the matter back to this court to reconsider the cause in light of Senate Bill No. 775,[2] which amended section 1170.95 to encompass attempted murder.

We now reverse the trial court's summary denial of McDaniels's petition for resentencing in its entirety, and remand the matter to the trial court to issue an order to show cause pursuant to section 1170.95, subdivision (c) and to hold a hearing pursuant to section 1170.95, subdivision (d).

## BACKGROUND

### 1.   *Information and Conviction*

In May 2020, the People charged McDaniels and three codefendants with the murder of Miguel Sanchez.  The People further alleged a firearm enhancement within the meaning of section 12022.53, subdivisions (b), (c), (d), and (e)(1).  The People also charged McDaniels and his confederates of the attempted murder of Salvador Velasquez and alleged a firearm enhancement within the meaning of section 12022.53, subdivisions (b) and (e)(1).  With respect to both counts, the

---

[1]  Undesignated statutory citations are to the Penal Code.

[2]  Senate Bill No. 775 (2021–2022 Reg. Sess.) effective January 1, 2022, amended section 1170.95 by Statutes 2021, chapter 551, section 2.)

People alleged a gang enhancement under section 186.22. The People charged McDaniels with possession of a firearm by a felon and, in connection with that count, listed four prior felony convictions. As explained below, McDaniels was tried twice on the murder and attempted murder charges.

In our prior opinion following McDaniels's second jury trial (*People v. McDaniels et al.* (Mar. 9, 2015, B250574) [nonpub. opn.] (*McDaniels I*), we described the facts, which we now summarize.

There was evidence that McDaniels and the shooter were members of the Duroc Crips gang. The day before the shooting, McDaniels gave the shooter a gun. On February 9, 2008, McDaniels drove the shooter and two other Duroc Crips gang members or associates, and McDaniels indicated the group was going to "hit some corners." When victims Miguel Sanchez and Salvador Velasquez were walking, McDaniels made a sharp turn and proceeded towards them. McDaniels slowed the vehicle to allow his passenger to shoot the victims. McDaniels's passenger began to shoot numerous shots in rapid succession. Sanchez was killed. Velasquez survived. (*McDaniels I, supra*, B250574.)

A gang expert testified that the shootings were in retaliation for an earlier gang shooting. The gang expert also testified that "hitting corners," meant "going into a rival gang's territory to look for an enemy to attack." (*McDaniels I, supra*, B250574.)

The shooter testified that no one in the car knew he had a gun. According to the shooter, when McDaniels gave him the gun it was not loaded. The shooter admitted to firing the gun at Sanchez and Velasquez and testified that he fired at them for personal reasons.

The first jury convicted McDaniels of being a convicted felon in possession of a firearm. The jury was unable to reach a verdict on the murder and attempted murder charges.

In a second trial, McDaniels was tried along with the shooter. The second jury convicted McDaniels and the shooter of first degree murder. (All further references to the jury are to the second jury.) The jury further found that a principal personally used a firearm and that the gang enhancement was true. The jury convicted McDaniels and the shooter of willful, deliberate, and premediated attempted murder and further found that a principal personally used a firearm. The jury found the gang enhancement true in connection with the attempted murder.

The trial court sentenced McDaniels to a total indeterminate term of 90 years to life and a concurrent two-year determinate term.

## 2. *Jury Instructions*

At McDaniels's second trial, the jury instructions included the following. "To prove that the defendant is guilty of Murder and/or Attempted murder, the People must prove that: [¶] 1. The defendant is guilty of Assault with a Semi-automatic firearm, or Carrying a concealed firearm; [¶] 2. During the commission of Assault with a Semi-automatic firearm, or Carrying a concealed firearm, a coparticipant in that Assault with a Semi-automatic firearm or Carrying a concealed firearm committed the crime of Murder and Attempted Murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Murder and/or Attempted Murder was a natural and probable consequence of the commission of the Assault with a Semi-automatic firearm or Carrying a concealed firearm. [¶] . . .

4

[¶]  If you decide that the defendant, Lamarr McDaniels, aided and abetted one of these crimes and that Murder and or Attempted Murder was a natural and probable consequence of that crime, the defendant is guilty of Murder and/or Attempted Murder.  You do not need to agree about which of these crimes the defendant aided and abetted." (*McDaniels I*, *supra*, B250574.)

The court instructed the jury on two theories of first degree murder—willful, deliberate, and premediated murder, and murder committed by intentionally shooting from a motor vehicle at a person outside the vehicle with intent to kill.

The court further instructed the jury: "The defendants [McDaniels and the shooter] are charged in Count 1 with murder in violation of Penal Code section 187.  [¶]  To prove that the defendants are guilty of this crime, the People must prove that: [¶]  1.  The defendant committed an act that caused the death of another person; [¶]  AND  [¶]  2.  When the defendant acted, he had a state of mind called malice aforethought.  [¶]  There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.  [¶]  The defendant acted with express malice if he unlawfully intended to kill.  [¶]  The defendant acted with implied malice if:  [¶]  1.  He intentionally committed an act; [¶]  2.  The natural and probable consequences of the act were dangerous to human life; [¶]  3.  At the time he acted, he knew his act was dangerous to human life; [¶]  AND  [¶]  4.  [H]e deliberately acted with conscious disregard for human life." (*McDaniels I*, *supra*, B250574.)

### 3. *Prior Appeal*

McDaniels, who was not the actual shooter, previously appealed from the judgment of conviction. In the time between his trial and the appellate decision, our Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which held that an "aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Id.* at pp. 158–159.) *Chiu* further held that a first degree murder conviction requires reversal unless the reviewing court concludes "beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premediated murder." (*Id.* at p. 167.) *Chiu* "left in place natural and probable consequences liability for second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 845 (*Gentile*).)

In *McDaniels I,* we held that McDaniels's conviction for first degree murder must be conditionally reversed because it was inconsistent with *Chiu.* We gave the People a choice: either accept a reduction of the murder conviction to second degree murder or retry the murder charge as to McDaniels. We affirmed McDaniels's remaining convictions. In doing so, we concluded that the jury could have convicted McDaniels either based on direct aiding and abetting liability or based on a conclusion that murder was the natural and probable consequences of either assault with a semiautomatic firearm or carrying a concealed weapon. We explained: "[E]vidence that McDaniels gave [his confederate] the gun was uncontradicted, and the jury instructions permitted the jury to convict McDaniels of first degree premediated murder by concluding he aided and abetted

6

the crime of carrying a concealed firearm. . . . Nothing in the record permits us to conclude beyond a reasonable doubt that the jury did not, in fact, adopt that analysis and base its verdict on a legally invalid theory." (*McDaniels I*, *supra*, B250574.) We further held that substantial evidence supported McDaniels's murder conviction as a direct aider and abettor.

### 4.    *Resentencing After* **McDaniels I**

The People elected not to retry defendant. The trial court resentenced him to a total indeterminate term of 80 years to life and again ordered the two-year determinate term to run concurrently.

### 5.    *Petition for Resentencing*

On June 10, 2019, McDaniels filed in propria persona a petition for resentencing. He alleged that he was convicted of murder pursuant to the natural and probable consequences doctrine. McDaniels alleged that he could no longer be convicted of murder because of changes to sections 188 and 189, effective January 1, 2019. McDaniels requested that counsel be appointed for him.

The trial court appointed counsel to represent McDaniels. The People opposed McDaniels's petition for resentencing arguing, among other things, that there was sufficient evidence to convict him of directly aiding and abetting the murder.

Through counsel, McDaniels filed a response arguing that the jury was instructed on the "now prohibited" theory of natural and probable consequences doctrine and that alone demonstrated a prima facie case for relief under section 1170.95. McDaniels also sought resentencing for his attempted murder conviction.

7

## 6.  *Trial Court's Denial of McDaniels's Petition*

The trial court denied McDaniels's petition for resentencing, finding he failed to establish a prima facie case for relief.  The court also concluded that section 1170.95 does not apply to attempted murder convictions.

## DISCUSSION

## A.    Legal Background

To be convicted of murder, a jury must ordinarily find that the defendant acted with the requisite mental state, known as " 'malice aforethought.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181, quoting § 187, subd. (a).)  Until recently, the felony murder rule provided an exception that made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*Chun*, at p. 1182.)  Also, until recently, the natural and probable consequences doctrine permitted a " ' "person who knowingly aids and abets [the] criminal conduct [of another person] is guilty of not only the intended crime . . . but also of any other crime the [other person] actually commits . . . that is a natural and probable consequence of the intended crime." ' [Citation.]" (*Chiu, supra,* 59 Cal.4th at p. 161; see also *Gentile, supra,* 10 Cal.5th at pp. 845–846.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which became effective January 1, 2019, raised the level of culpability required for murder liability to be imposed under a felony murder or natural and probable consequences theory.  (See Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill amended section 189, which defines the degrees of murder, to limit murder liability based on felony murder or a natural and probable consequences theory for a person who:  (1) was the

actual killer; (2) though not the actual killer, acted "with the intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e).)

Senate Bill No. 1437 also amended the definition of malice in section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  In addition to amending sections 188 and 189, the Legislature enacted section 1170.95.  (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)  That provision authorizes a person convicted of felony murder, murder under a natural and probable consequences theory, or other theory of imputed malice to file with the sentencing court a petition to vacate the conviction and be resentenced.  (§ 1170.95, subd. (a).)

Under the amended version of section 1170.95, subdivision (a)(2), which became effective January 1, 2022, a defendant convicted of attempted murder may be eligible for resentencing relief.  The amended statute permits persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine or manslaughter" to file a petition for resentencing.  (§ 1170.95, subd. (a).)

9

**B.  McDaniels Established a Prima Facie Case for Resentencing on His Murder and Attempted Murder Convictions**

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'  (§ 1170.95, subds. (a)(1)–(3);  see also § 1170.95 subd. (b)(1)(A).)"  (*People v. Lewis* (2021) 11 Cal.5th 952, 959–960 (*Lewis*).)  "Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief.  (§ 1170.95, subd. (c).)"  (*Lewis*, at p. 960.)

Here, McDaniels filed a facially sufficient petition and made a prima facie showing for relief.  The jury instructions permitted the jury to convict McDaniels of murder and attempted murder on an imputed malice theory.[3]  We cannot exclude the

---

[3]  Specifically, the jury instructions permitted finding McDaniels guilty of murder or attempted murder if he was "guilty of Assault with a Semi-automatic firearm, or Carrying a concealed firearm; [¶] 2.  During the commission of Assault with a Semi-automatic firearm, or Carrying a concealed firearm, a coparticipant in that Assault with a Semi-automatic firearm or

possibility that the jury relied on the natural and probable consequences doctrine when it convicted McDaniels of murder and attempted murder. Therefore, McDaniels is not ineligible for relief as a matter of law. Because the record of conviction does not refute as a matter of law McDaniels's statement that he was convicted based on the natural and probable consequences doctrine, the trial court erred in summarily denying McDaniels's petition.

The case must be remanded for the trial court to issue an order to show cause.[4] (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at p. 962.) After issuing an order to show cause, the trial court must hold a hearing pursuant to section 1170.95, subdivision (d)(1) unless the parties waive a resentencing hearing under section 1170.95, subdivision (d)(2).

---

Carrying a concealed firearm committed the crime of Murder and Attempted Murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Murder and/or Attempted Murder was a natural and probable consequence of the commission of the Assault with a Semi-automatic firearm or Carrying a concealed firearm." (*McDaniels I*, *supra*, B250574.)

[4] The People agree that the case must be remanded and that the trial court proceed in accordance with section 1170.95, subdivision (c).

## DISPOSITION

The order denying McDaniels's petition for resentencing is reversed. Upon remand, the trial court shall issue an order to show cause pursuant to section 1170.95, subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d)(1) unless the parties waive such hearing under section 1170.95, subdivision (d)(2).

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

12